## HAMILTON v. McALISTER.

1. FINDING OF FACT as to mutual mistake sustained. *Divided Court.*
2. EQUITY—CONTRACT—RESCISSION—REFORMATION — MUTUAL MIS-
TAKE.—Equity will relieve a party of a contract made under *mutual mistake;* but in so doing, it will not rescind the whole contract, if justice can be done by a reformation of it.

Before BENET, J., Oconee, July, 1895. Modified.

Action by William O. Hamilton against Charles McAlister, for rescission of contract upon mutual mistake. The following is the Circuit decree:

The plaintiff in this cause brings his action in the Court of Equity, and asks the aid of the Court to rescind a contract in writing entered into by and between himself and the defendant; also to cancel, not only the said written agreement, but also certain outstanding unpaid notes executed in accordance with the said contract; and also to require the defendant to refund the money paid by him to the defendant on the first of the notes executed as aforesaid, with interest from the date of its payment. The cause was heard upon the pleadings and upon the testimony taken by the master. The action is based upon the alleged mutual mistake of the plaintiff and defendant, no charge being made either of fraud or of misrepresentation. The plaintiff alleges in his complaint that on 19th November, 1894, he purchased from the defendant a lot of timber growing upon a certain tract of land known as the "Gibson Tract;" that for this timber he agreed to pay $1,000, in three equal instalments; that the agreement between the parties was in

writing, and it is set forth in the complaint; that in pursuance of this written agreement, he made his three promissory notes to defendant, of the dates and amount set forth in the complaint; that the said agreement and notes were entered into and executed under the belief on the part of both plaintiff and defendant that the line of the tract of land described in the agreement included only the lands of the defendant, whereas it really included some hundred acres of land belonging to Mrs. C. H. Biemann; that for the greater part of the timber which the plaintiff, without fault or negligence on his part, supposed that he was buying and the defendant supposed that he was selling, was upon the land of the said Mrs. Biemann; and that upon the land of the defendant were only about 400 trees of the kind and dimensions mentioned in said agreement, and they so situated as to be unsuitable for use as the plaintiff intended. He alleges, further, that before the discovery of the mistake he had paid the defendant the first note as it fell due; but that upon such discovery he requested that the said contract be rescinded, the written agreement and the outstanding notes canceled, and the money paid on the first note refunded; that on defendant's refusal, he brought this suit.

The testimony taken and reported by the master satisfies me that the plaintiff is entitled to the relief he prays for. It shows clearly that at the time the contract was entered into, both plaintiff and defendant were honestly mistaken as to the boundary line of the land on which the timber bargained for was growing. And while, on the one hand, there is no room for even the suspicion of fraud or deceit or misrepresentation on the part of the defendant, McAlister, on the other hand, I see no ground for holding that the plaintiff, Hamilton, was guilty of negligence or carelessness, such as should forbid his obtaining the aid of a court of equity. It is true, that a court of equity should not lightly nor hastily step in and cancel a contract solemnly made between parties perfectly competent to make a bind-

ing contract, each being able to take good care of himself. The extraordinary power to cancel and rescind agreements should not be exercised except when the plaintiff's allegations, either of fraud or of honest mistake, or the like, are clearly and satisfactorily established by competent evidence. When such is the case, however, the Court should not hesitate to grant the relief demanded. The case before me is one for the interposition of the Court in the plaintiff's behalf. The clear preponderance of the testimony shows that the written agreement was based upon a serious mistake, honestly held by both parties. Such being my opinion, I am bound to hold that the agreement cannot stand, and that the notes made in accordance with it should be canceled, and the money paid on the first note paid back to the plaintiff.

The defendant excepts to this decree on the following grounds:

I. Because it is respectfully submitted that his Honor erred in holding that the testimony shows clearly that at the time the contract was entered into, both plaintiff and defendant were honestly mistaken as to the boundary line of the land on which the timber bargained for was growing.

II. Because his Honor erred in finding as a fact that there is no ground for holding that the plaintiff, Hamilton, was guilty of negligence or carelessness such as should forbid his obtaining the aid of a court of equity.

III. Because his Honor should have held that the plaintiff, Hamilton, having admitted in his testimony that he had been upon the land and had certain boundaries pointed out to him by third parties, which he saw when he received the plat of the land were not the correct boundaries, and that in spite of this he completed the contract by executing the notes in question, was guilty of such negligence as would preclude him from relief in a court of equity.

IV. Because the uncontradicted evidence of the defendant, McAlister, shows that there was no mistake on his

part, and there is a total failure of evidence of that *mutual* mistake which alone can justify a court of equity in rescinding a contract on the ground of mistake.

V. Because the testimony of the witness, George S. Hamilton, as to what occurred between himself and the witness, Evers, and as to the declarations of the latter, all of which was objected to by defendant's counsel and exception noted, was incompetent as hearsay and irrelevant, and should have been excluded by the presiding Judge and not considered.

VI. Because the testimony of the plaintiff as to conversations between himself and his brother, George S. Hamilton, objected to by defendant's counsel, and exception noted, was incompetent as hearsay and irrelevant, and should have been excluded and not considered by the presiding Judge.

VII. Because the testimony of the plaintiff as to conversations between himself and the witness, Evers, after the contract had been entered into and the papers signed, which was objected to by defendant's counsel and exception noted, was incompetent as hearsay and irrelevant, and should have been excluded and not considered by the presiding Judge.

VIII. Because the testimony of the plaintiff concerning a rough sketch, on brown paper, of the premises in question, which was objected to by defendant's counsel and exception noted, was incompetent, as there was no sufficient proof of the loss or destruction of said sketch and no notice to produce it, and said testimony should have been excluded and not considered by the presiding Judge.

IX. Because his Honor erred in ordering that the agreement set out in the complaint be rescinded, and delivered up to the clerk of the court for Oconee County, and marked by him, "Rescinded by order of Court, dated July 7th, 1896," signed by him under his official seal.

X. Because his Honor erred in ordering that the two notes mentioned in the complaint, one for $343.32, due 1st April, 1895, and one, $340, due August 1st, 1895, be cancelled and delivered to clerk of court for Oconee County, and marked by him, "Cancelled by order of Court, dated

July 7th, 1896," across the faces thereof, signed by him with his official seal.

XI. Because his Honor erred in ordering that the defendant, Charles McAlister, pay back to the plaintiff, W. O. Hamilton, the amount paid by the latter to the former on the note which fell due on the 1st January, 1895, namely, $336.66, with interest thereon from that date at seven per cent.

*Messrs. Cothran, Wells, Ansell & Cothran,* for appellant, cite: 2 Strob. Eq., 154; 2 S. C., 108; 13 S. C., 203; 21 S. C., 234; 142 U. S., 47; 93 U. S., 55; 158 U. S., 505; 19 S. E. R., 787; 142 U. S., 510; 11 Cush., 205; 31 N. E. R., 180; 2 Rich., 154; 15 S. E. R., 197; 94 U. S., 207; 124 U. S., 173.

*Mr. W. J. Stribling,* contra, cites: 15 S. E. R., 813; 17 Ib., 210; 2 Bail. L., 327; 42 S. C., 446; 18 John. Rep., 60; 31 S. C., 608; 7 S. C., 47; 2 Hill, 657.

April 20, 1897. The opinion of the Court was delivered by

MR. JUSTICE POPE. The plaintiff commenced his action against the defendant in the Court of Common Pleas for Oconee County, in this State, on the 8th day of February, A. D. 1895, on the equity side of the Court, for the recision of a contract made with the defendant on the 19th day of November, 1894. The cause came on to be heard before his Honor, Judge Benet, at the October, 1895, term of said Court, upon the pleadings and testimony taken before the master for that (Oconee) county, and thereafter a decree was pronounced granting the relief the plaintiff prayed for. Thereupon the defendant appealed to this Court. Let the decree of the Circuit Judge and the exceptions thereto be incorporated in the report of the case.

A brief statement of the facts may be necessary to a proper understanding of the appeal. The plaintiff operates a saw mill, and at the time of the contract (19th November, 1894,) lived at a different point of Oconee County from where the lands of the defendant were located in that county.

The defendant was a merchant in the city of Greenville, in this State, but owned a tract of land, containing 369 acres, in Oconee County, known as the "Gibson place," adjoining lands of Mrs. C. H. Biemann and a Mr. Wickliffe, and possibly others. It became noised abroad in that county that these lands of defendant had valuable pine timber upon them, and several lumber dealers became anxious to obtain them by purchase. These were a Mr. Harbin, George S. Hamilton, William O. Hamilton, and possibly others. When any of these parties approached the owner, Mr. McAlister, to purchase the same, with very commendable propriety, he would tell the parties that he was not familiar with either the lines and boundaries of his lands or with the timber growing thereon. However, he invited them to examine those lands for themselves, and suggested to at least one of them, Mr. George S. Hamilton, who is the brother of plaintiff, to consult a Mr. Ernest Evers, who was the tenant of defendant, and had at least a partial control of defendant's "Gibson place." To Mr. George S. Hamilton this Mr. Evers had pointed out a body of 100 acres of timbered lands as part of defendant's lands, relying for this statement upon a conversation with, and acts accompanying the same of, Mr. McAlister himself—such as claiming a certain road to be on this tract of land; certain trees that had been cut without his permission as having been cut on his land; a certain branch as being on his land; and certain excavations in search of gold to have been made on his land; also upon what a Mr. Collins—to whom Mr. McAlister had referred him for knowledge of his lines and boundaries—had told him as to the dividing lines between McAlister and Mrs. Biemann. From the sequel, we have no doubt that the plaintiff had counted the trees on these lands suitable for saw mill purposes. At any rate, after a correspondence which showed some eagerness on his part to buy, Mr. William O. Hamilton went over to Greenville to see if he could not purchase the timber on defendant's land for sawing purposes. The defendant was entirely frank in this interview

with the plaintiff, both as to his boundaries and the quan-
tity and quality of his timber.    When plaintiff offered him
52½ cents a tree suitable for sawing into lumber, he promptly
declined it, giving as a very good reason therefor that it
would be too inconvenient.    Defendant finally offered to
sell the timber, with the privilege of using his land for a
year to saw the same thereon, to the plaintiff for the sum of
$1,000.    The plaintiff hesitated for a while, claiming that
the price was too high; but after a short absence he returned
to defendant's store and agreed to his terms.    During their
interview defendant could not show the plat of his land at
once, and made a rough drawing on a piece of brown paper
as an illustration of his recollection of the shape of his tract
of land.    The parties entered into this agreement in writing:
"State of South Carolina.    This agreement made and entered
into on the 19th of November, 1894, between Charles McAl-
ister of the first part and W. O. Hamilton of the second part
witnesseth:    That said McAlister has bargained and sold, and
by these presents does bargain and sell, to said Hamilton, at
the sum and price af $1,000, all of the pine timber, which
shall and will square eight inches and upwards, on that tract
or parcel of land, belonging to said McAlister, situate in
Oconee County, South Carolina, containing 369 acres, more
or less, and known as the Gibson tract, and adjoining lands
of Wickliffe and others.    And said Hamilton agrees to pay
for said timber in three equal instalments, payable on the
first day of January, April, and July, 1895, with interest on
these instalments from this day at eight (per cent.) per an-
num.    And further agrees to cut and remove said timber at
his own expense during the year 1895.    In witness whereof,
&c. * * * Charles McAlister, (L. S.) W. O. Hamilton. (L. S.)
It is further agreed, that if any part of said land is taken by
adverse claim of Isaac Wickliffe, the said Hamilton is to
have a deduction of 52½ cents a tree for all so taken of size
and quality hereby sold.    Charles McAlister, W. O. Hamil-
ton."    It should be stated at this point that the addition to
the agreement, referring to claim of Isaac Wickliffe, was

made because it was reported he would claim a part of defendant's land. The three notes were not prepared on the 19th November, 1894, but they were to be sent over to plaintiff accompanied by the plat of the "Gibson tract of land" on the next day. On the 21st November, 1894, both the three notes and said plat were sent by defendant to the plaintiff by mail, who on the 24th November, 1894, received the same, and on the 27th November, 1894, the plaintiff signed the notes and sent them to the defendant, accompanied by the following letter: "Fort Madison, S. C., November 27th, 1894.—Mr. Charles McAlister, Greenville, S. C.—Dear Sir: I received your letter containing notes and plat on the 24th, but have had lagrippe, and haven't had the opportunity to examine them until to-day. I have signed the notes and will keep the plat until Christmas, when I want to go up and look at your boundaries, after which I will return it. Yours truly, W. O. Hamilton. P. S. Please say nothing about the enormous price of the timber. W. O. H." The plaintiff paid to the defendant the note that fell due on first January, 1895, but in a day or two afterwards went in person to see the defendant, in order to get some satisfactory arrangement arising from the fact that Mrs. C. H. Biemann was cutting the timber from about 100 acres of the land he thought was the defendant's when he traded for his timber. On the 8th day of January, the defendant, by a letter to that effect, declined to do anything in that direction, holding to the position that he stood to the contract as written. Further correspondence was had, without any change in the attitude of the parties. Finally, on the 19th day of February, 1895, this action was begun.

The time at our disposal will not permit of any elaboration at length of our views. From the testimony we are satisfied of the utmost good faith of both plaintiff and defendant, but we are equally satisfied that there was a mutual mistake here. It seems to us that this result is necessary to acquit the defendant of any wrong doing, for otherwise we would be obliged to conclude that

defendant intentionally overreached the plaintiff; and this we could not do under the testimony itself as to Mr. McAlister's high character, as well as the unconcealed judgment of the plaintiff on this point. The Circuit Judge has gone too far in his decree, however; he ought to have contented himself with a reformation of the contract by giving plaintiff credit on his indebtedness to the defendant, as of 19th November, 1894, for the sum of $431.85, which result is reached by us in this way: The witness, Fred. White, testified that he counted the trees on the land taken by Mrs. C. H. Biemann, and found that there were on it trees answering the contract, 612; on the lands claimed by both McAlister and Wickliffe, 348 trees; and on McAlister's land, undisputed, 456 trees. These aggregate 1,416 trees. By a calculation it will be seen that the plaintiff agreed to pay 70.565 cents per tree. Thus making the 612 trees, lost by plaintiff through title of Mrs. Biemann, worth $431.85. The plaintiff should be required to keep his contract as to the trees on McAlister's own land (456 trees), and also as to the 348 trees on the land claimed by both Wickliffe and McAlister. Of course, if hereafter Wickliffe recovers the land from McAlister, and Hamilton has to lose those 348 trees, he can, under his agreement with defendant, claim 52½ cents per tree from the defendant. It may be urged that the relief we administer to the plaintiff was not that sought in his complaint. He sought, it is true, a recission of the entire contract; the relief we give is a partial recission of the contract, and fully as much as he is entitled to. Equity will relieve a party from a contract when it is made, in mutual mistake, by the parties to it, but this does not mean that of necessity the entire contract will be declared null and void. There is a great aversion in courts to making contracts for parties *sui juris*, and there should be great hesitancy in *unmaking* said contracts. Still, where it is made palpable that one of the parts of the contract is not justly there, it (the objectionable part) should be removed, and the balance of contract decreed to stand. These par-

ties, plaintiff and defendant, are in a court of equity, whose proud boast is that proper relief will be enforced in every case according to its surroundings. Here the defendant should be required to pay nothing to plaintiff, but should only be required to enter a credit, as of the 19th day of November, 1894, on the two notes still outstanding, for the amount of $486.85, as hereinbefore ascertained, and also the privilege to Hamilton, for and during the remainder of the year 1897, to cut and remove the timber on the lands of defendant under his contract. This result would have been inevitable, notwithstanding any testimony which was objected to, and, therefore, such objections become abstract questions.

This being my conclusion, concurred in by Mr. Justice Jones, although not concurred in by the other two Justices, the effect is that the judgment of the Circuit Court is modified in accordance with the views hereinbefore announced by me. It is accordingly so adjudged.

MR. JUSTICE JONES concurs in the above opinion.

MR. CHIEF JUSTICE McIVER, *dissenting.* The action in this case was brought to cancel an agreement in writing, under seal, entered into by the plaintiff and defendant on the 19th day of November, 1894. Its terms show that the agreement was for the sale by the defendant to the plaintiff of all the pine timber of certain specified dimensions "on that tract or parcel of land belonging to said McAlister, situate in Oconee County, South Carolina, containing 369 acres, more or less, and known as the Gibson tract, and adjoining lands of Wickliffe and others," at the price of $1,000, payable in three equal instalments, on the first days of January, April, and July, 1895, respectively.

The action is based upon the allegation that there was a *mutual* mistake of fact as to the lines and boundaries of the tract of land referred to in the agreement. Of course, the burden of proof is upon the plaintiff to show such alleged mistake, and this he must do by clear and convincing

testimony, as it is no small thing for a court of equity to
set aside a formal agreement, under seal, entered into by
parties competent to contract. Now, while it may be that
the evidence is sufficient to show that the plaintiff was un-
der a mistake as to the lines of the tract of land upon which
he agreed to buy all of the timber trees of certain dimen-
sions, I am unable to discover any evidence that the defend-
ant was laboring under a like mistake. In pursuing this
inquiry, the natural order would seem to be to inquire
whether any, and if so what, portions of the testimony was
incompetent. Upon this point the Circuit Judge does not
seem to have made any specific ruling, as he nowhere in
his decree alludes to the exceptions taken by the appellant
to the testimony; and as he heard the case upon the testi-
mony taken by the master, where exceptions were plainly
noted to portions of the testimony, the inference is that he
regarded all the testimony as competent, especially as he
rests his conclusion upon "the testimony taken and reported
by the master," which embraces that to which exception
was duly taken and noted. A large part of this testimony
consisted of declarations of Geo. S. Hamilton and of the
witness, Evers, who were examined on behalf of the plain-
tiff, and, in my judgment, all such declarations were clearly
incompetent, as mere hearsay. I think, therefore, without
pursuing this inquiry further, that appellant's fifth, sixth,
and seventh exceptions are well taken. As to the eighth
exception, relating to the rough sketch made on a piece of
brown paper, I am not so clear; but in the view which I
shall take, this becomes a matter of small importance. It
is clear from the testimony that the defendant did not know,
and did not profess to know, the lines of the tract of land
upon which he was selling the timber trees. Such is the
testimony, not only of the defendant, but of the plaintiff
himself, for he says: "He (the defendant) did not appear to
know himself exactly about the boundaries;" and this is
manifest from the testimony of both Geo. S. Hamilton and
Earnest Evers. Then, when the parties met for the pur-

pose of entering into the agreement, it is manifest that both parties understood that the one was buying and the other was selling the timber trees on the Gibson tract as represented by a plat thereof, but that plat not being accessible on the day the agreement was signed, the transaction was not then finally closed, but the arrangement was, that defendant was to send the plaintiff the said plat with the notes for him to sign.    Accordingly, on the 21st of November, 1894, the defendant did send the plat and notes to the plaintiff, enclosed in a letter, which was received by plaintiff on the 24th of November, 1894, and, on the 27th of that month, plaintiff sent to defendant the notes signed, in a letter, saying that he wanted to keep the plat "until Christmas, when I want to go up and look at your boundaries;" and plaintiff, in his testimony, says that when he saw the plat he saw that the rough sketch made on a piece of brown paper did not correctly represent the lines of defendant's land.    And yet the plaintiff admits that more than a month after he had seen the plat which did correctly represent the lines of the land, he paid up the first note, which became payable on the 1st of January, 1895, without a word of objection.    So that even if the rough sketch on the brown paper was competent evidence, and even if it was misleading as to the lines of the land, yet the plaintiff was not misled by it, or, at least, ought not to have been misled by it, as he had in his hands the means of ascertaining what were the lines, and if he chose to close the contract before using those means, he must take the consequences of his own folly and culpable negligence.    In a word, the testimony leaves no doubt on my mind that both parties fully understood that the one was selling and the other buying all of the timber trees of specified dimensions on the tract of land known as the "Gibson tract," as it was represented by the plat, and that there was no *mutual* mistake at all, either as to the lines of the land or anything else.    If there was a mistake, it was on the part of the plaintiff alone, and not superinduced

16—49

by anything said or done by the defendant, but by the loose talk of the neighborhood, and by the neglect of the plaintiff himself to use the means at hand for the purpose of correctly informing himself. Such a mistake affords no ground for relief even in a court of equity. As is said in 2 Pom. Eq. Jur., section 839: "The erroneous conception or conviction of the understanding which constitutes the equitable notion of mistake, has nothing in common with negligence; equity will not relieve a person from his erroneous acts, or omissions resulting from his own negligence." To same effect see 15 Am. & Eng. Ency. of Law, 628, *et seq.* This doctrine is recognized by our own decisions. *Murrel* v. *Murrel,* 2 Strob. Eq., 148; *Kennerty* v. *Etiwan Phosphate Company,* 21 S. C., 226.

I think, therefore, that the judgment of the Circuit Court should be reversed, and the complaint dismissed.

MR. JUSTICE GARY. I concur in the dissenting opinion of Mr. Chief Justice McIver, as the testimony of the plaintiff shows that he believed the boundaries had not been correctly stated before he paid the first note that fell due, and even before he signed the notes.